UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRIAN ROGERS,<br>    Plaintiff<br><br>V.<br><br>MORAN TOWING & TRANSPORTATION<br>CO., INC.,<br>    Defendant | )<br>)<br>)<br>)  Civil Action<br>)<br>)  No. 04-11448-RCL<br>)<br>)<br>)<br>) |

## DECLARATION OF BRIAN ROGERS

I Brian Rogers, the Plaintiff in the above action do under oath declare and state as follows:

1.  I was employed as a deckhand on the TUG JAMES TURECAMO in 2002 through my second injury in 2003.

2.  During this time the TUG JAMES TURECAMO worked moving barges of petroleum products up and down the east coast from North Carolina to Bangor Maine. In the warm months we moved asphalt in the cold months we moved home heating oil. While employed on the TUG JAMES TURECAMO I made six to ten trips into Boston Harbor, to deliver product into Chelsea Creek.

3.  Moran operates harbor tugs which return to their Staten Island dock between jobs assisting a ship. However the TUG JAMES TURECAMO is not a harbor tug and does not do ship assist work, rather it is an ocean going tug which was constantly moving from one port to another. The statement in the Affidavit of James J. Newman that the TUG JAMES TURECAMO was based in Moran's shipyard in Staten Island is false. The TUG JAMES

TURECAMO was not based anywhere. While I was on the TUG JAMES TURECAMO we spent more time tied to the dock in Chelsea Creek (Boston Harbor) than we did at Moran's Staten Island shipyard. It is my best estimate that while I was employed on the TUG JAMES TURECAMO we spent less than 2% of the time at Moran's Staten Island Shipyard. 98% of the time we were either in transit at sea or at a petroleum facility somewhere on the east coast of the United States taking on or discharging product.

4.      The statement in <u>Affidavit of James J. Newman</u> that "the tug's crew ordinarily reports to the tug for duty at the shipyard in Staten Island" is false. While I was on the TUG JAMES TURECAMO we work in two week shifts – two weeks on and two weeks off. The location of the crew changes was entirely a function of where the vessel was located on the 14th day of work. If the vessel was in Bangor Maine on the 14th day the crew change would be made in Bangor, if we were in Richmond Virginia, we would change in Richmond. If we were going to be at sea during the 14th day we would make a crew change earlier at the port of departure or later at the port of arrival. The vast majority of time the crew change would be made at a petroleum dock while the vessel was either taking on or discharging cargo. While I was employed on the TUG JAMES TURECAMO we made several crew changes at Chelsea Creek in Boston Harbor. While I was employed on the vessel we made more crew changes in Boston Harbor than we did at the Moran Shipyard in Staten Island.

5.      While I was employed on the TUG JAMES TURECAMO all of the management of the vessel was run out of Greenwich, CT. The Company dispatcher, who told the Captain when and where to go was based out of Greenwich. The Personnel Department who hire and fired the crew as based out of Greenwich. The company management who told the Captains how to run the tug

was based out of Greenwich. The Moran Staten Island shipyard was used to tie up the harbor tugs and was used to repair Moran tug boats.

     Pursuant to 28 USC 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 6th day of January, 2005

                                                        */s/ Brian Rogers*
                                                        BRIAN ROGERS